IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JESUS M. VAZQUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10cv751 |
| | ) | |
| OFFICER WALN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER, MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court for a recommended ruling on Defendant Officer Waln's motion for summary judgment. (Docket Entry 39.) For the reasons that follow, Defendant's summary judgment motion should be granted. Additionally, to the extent that Plaintiff's *pro se* filings are construed as a motion for appointment of counsel (Docket Entries 42, 43), that motion is denied.

## I. BACKGROUND

Plaintiff Jesus M. Vazquez, a prisoner of the State of North Carolina, brought this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that the defendant prison officials violated his constitutional and statutory rights during his incarceration at Albemarle Correctional Institution ("ACI") in Badin, North Carolina. Plaintiff is a Mexican born Native American.

Plaintiff originally brought eight claims against Defendant Waln and three other defendants. All defendants filed a motion to dismiss. By Recommendation filed November 28, 2011, United States Magistrate Judge P. Trevor Sharp recommended that all claims

against the three other defendants be dismissed. (*See* Recommendation and Order, Docket Entry 30.) Additionally, Judge Sharp recommended that all but three of the claims against Defendant Waln be dismissed. On February 14, 2012, Judge Sharp's Recommendation was adopted by the Court. Accordingly, the claims that remain against Defendant Waln are ones for: (1) violation of Plaintiff's First Amendment right to free exercise of religion; (2) violation of due process by deprivation of Plaintiff's Religious Box; and (3) violation of equal protection with regard to seizure of Plaintiff's religious material and interference with his religious practices, and with regard to discrimination based on his status as a Mexican Native American.

In his Complaint, Plaintiff alleges that he possessed a "Religious Box," which he describes as a "clear plastic box that Native inmates place their religious-related items in and keep in their possession at all time[s]." (Compl. at 7, Docket Entry 2.) Plaintiff used the items in the box for group and private worship. (*Id.*) According to Plaintiff, on January 31, 2010, Defendant Waln, a correctional officer at ACI, "took Plaintiff's Religious Box from top of the Plaintiff's locker where he had it sat and fixing to do his prayers." (*Id.* at 5.) Plaintiff alleges that Defendant Waln stated that "Mexicans can't have American Native box[es]." (*Id.*) Plaintiff alleges that Defendant's actions constituted a violation of Plaintiff's constitutional rights and his statutory rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1.

On October 17, 2012, Defendant Waln filed a motion for summary judgment, arguing that Plaintiff's claims are without merit. On October 18, 2012, a "Roseboro Letter"[1] was sent to Plaintiff at the address on file with the Court (at ACI), informing Plaintiff that a dispositive motion had been filed and advising him of the consequences of failing to respond. (Docket Entry 41.) Plaintiff subsequently filed two documents: (1) "Declaration in Support of Plaintiff's Motion for Appointment of Counsel;" and (2) Memorandum of Law in Support of Plaintiff's Motion for Appointment of Counsel." (Docket Entries 42, 43.) There are presently no motions for appointment of counsel pending; a prior motion for appointment of counsel (Docket Entry 33) was denied by the Court on July 27, 2012. (*See* Docket, Text Order, July 27, 2012.)[2]

In support of his summary judgment motion, Defendant Waln submitted the affidavit of Lewis Smith, the facility administrator at ACI, along with other exhibits regarding ACI policies and procedures. (*See* Brief in Supp. of Summ. J. Mot., Exhibits 1-6, Docket Entry 40-1.) In his affidavit, Mr. Smith outlines the ACI storage policy for inmate property. Under this policy, all inmates are required to store all personal property inside their lockers. (*See* Affidavit of Lewis Smith ¶ 8, Docket Entry 40-2; Ex. A, ACI Standard Operating Procedure, Docket Entry 40-3.) This policy is enforced by treating all property not stored in lockers as contraband and confiscating the property. (*Id.*) The storage policy

[1] A notice sent pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) advises a *pro se* plaintiff of his right to file responses to dispositive motions filed by defendants.

[2] To the extent Plaintiff's Declaration and Memorandum may be construed as a motion for appointment of counsel, that motion is denied. Plaintiff is not entitled to appointment of counsel as a matter of right. *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). The circumstances of this case do not meet the requirements for appointment of counsel. *Id.* (noting that a litigant seeking appointment of counsel "must show that his case is one with exceptional circumstances.") In this case, it is neither apparent that Plaintiff has a colorable claim , nor apparent that he lacks the capacity to present his claim.

specifically prohibits inmates from storing personal property on top of their lockers. (Smith Aff. ¶ 9.) Inmates receive information about this policy during orientation:

> [a]ll property of a personal nature must be kept inside of your locker . . . Any property found on top of lockers, dayroom areas, outside of lockers or beds, except for approved items listed on the dorm appearance photo, will be taken as contraband and disposed of as such.

(Ex. B, ACI Inmate Orientation Booklet at 2 ¶ 5, Docket Entry 40-4.) The conclusion of the Orientation Booklet provides: "All clothes, books, etc. are to be stored in locker. All items that are left out will be confiscated." (*Id.* at 15.) The Dorm Appearance Regulations also warn inmates that "NO ITEMS WILL BE STORED ON TOP OF LOCKERS." (*Id.*) Plaintiff acknowledged orientation and receipt of the Inmate Orientation Booklet on October 7, 2008. (Ex. C, Plaintiff's Acknowledgement, Docket Entry 40-5.)

The North Carolina Department of Corrections provides approved rites, practices and sacred items which are authorized for adherents of the American Indian Religion, as set out in the DOC Religious Practices Manual. (Ex. D, DOC Religious Practice Resources Guide and Reference Manual, Docket Entry 40-6.) The Sacred Items Box is listed as approved religious property in this manual. (*Id.* at 4.)

Plaintiff has offered no evidence or response in opposition to the motion for summary judgment. Because Plaintiff "fail[ed] to file a response [to Defendants' summary judgment motion] within the time required by [this Court's Local Rules], the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." LR 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to

respond to argument amounts to concession).[3] In view of the fact that Plaintiff did file two pleadings after the summary judgment motion was filed, however, the Court will review the record to determine if there is a genuine issue of material fact so as to foreclose summary judgment.

## II. SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that a district court shall grant summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

If a movant has properly advanced evidence supporting entry of summary judgment, the non-moving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific facts in the form of exhibits and sworn statements illustrating a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 322-24 (1986). At that point, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In

[3] Plaintiff's status as a pro se litigant does not excuse his inaction. "As the United States Supreme Court observed in *McNeil v. United States*, 508 U.S. 106, 113 (1993), '[the Supreme Court] ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.' Accordingly, pro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." *Dewitt v. Hutchins*, 309 F. Supp. 2d 743, 748-49 (M.D.N.C. 2004) (internal parallel citations and second set of internal quotation marks omitted).

doing so, the judge must construe the facts and all "justifiable inferences" in the light most favorable to the non-moving party, and the judge may not make credibility determinations. *Id.* at 255; *T-Mobile Northeast LLC v. City Council of Newport News, Va.*, 674 F.3d 380, 385 (4th Cir. 2012). Because a ruling on summary judgment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits[,] . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to overcome a defendant's well-founded summary judgment motion. *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

### A. RLUIPA Claim

#### 1. Substantial Burden

Plaintiff alleges that Defendant violated his rights under the RLUIPA. Section 2000cc-1(a) of Title 42 provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion and (2) that the challenged practice substantially burdens that exercise. 42 U.S.C. 2000cc-2(b). Once the plaintiff establishes a prima facie case, the government bears the burden of persuasion on whether the challenged

practice is the least restrictive means of furthering a compelling governmental interest. *Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir. 2006).

Plaintiff essentially contends that Defendant Waln's confiscation of his Religious Box substantially burdened Plaintiff's right to exercise his Native American religion. Defendant does not dispute that Plaintiff's Religious Box stems from a genuinely held religious belief. Defendant does contend, however, that Defendant's action did not impose a substantial burden on Plaintiff's religious practice.

As stated, a "substantial burden" on the free exercise of religion is one that forces adherents of a religion to modify behavior, to violate beliefs, or to choose between forfeiting governmental benefits and abandoning a religious precept. *Lovelace*, 472 F.3d at 187. Plaintiff here has not demonstrated that Defendant's actions imposed a substantial burden on his religious exercise. DOC religious policy allowed Plaintiff to exercise his religion and to possess his Religious Box and its contents. The ACI storage policy simply required Plaintiff to store his Religious Box in his locker, not on top of it. Plaintiff admittedly was in violation of this policy. By not storing his Religious Box inside his locker, Plaintiff himself placed the burden on his free exercise of his religion. *See Sanders v. Ryan*, 484 F. Supp. 2d 1028 (D. Ariz. 2007) (court, noting that where prison regulations limited the number of audiotapes prisoners could keep in their cells, and plaintiff was found to be in violation of the policy, the confiscation of his old religious tapes was not a substantial burden on Plaintiff's exercise of religion because "[t]he only individual standing between Plaintiff and the receipt of new religious audiotapes was Plaintiff himself."). Moreover, even in the face

of Plaintiff's violation of the storage policy and the confiscation of his Religious Box, Plaintiff remained free to engage in communal and private worship.

Plaintiff has not presented evidence supporting his assertion that his religious practice has been substantially burdened by Defendant. Even if this court were to find that Plaintiff has met this burden, however, Defendant has produced uncontradicted evidence of a compelling governmental interest in ACI's property policy as the least restrictive means available.

**2. Compelling Government Interest and Least Restrictive Means**

Once a Plaintiff has established a substantial burden on the exercise of an inmate's religious practice, Defendant must show that the policy in question furthers a compelling governmental interest and is the least restrictive means of doing so. *Lovelace*, 472 F.3d at 186. Defendants argue that ACI's property policy is the least restrictive policy to maintain security in the prison. The Fourth Circuit, in *Lovelace*, recognized that "good order, security and discipline" are valid concerns of prison officials, and "security deserves particular sensitivity." *Id.* at 190. In his affidavit, ACI Administrator Smith notes that "ACI is a medium security prison, and Plaintiff is housed in a dormitory. Because inmates share living space, ACI has a compelling governmental interest in the protection of inmate property, the avoidance of inmate disputes over lost or stolen property and institutional cleanliness." (Smith Aff. ¶ 7.)

ACI's storage policy appears to be the least restrictive means available to further the compelling government interest of prison security. As noted by Administrator Smith, correctional officers do not have the time to get personally involved in property disputes

between inmates, and the notion that exceptions could be made for certain types of property "causes resentments among inmates and may lead to violence among inmates." (Smith Aff. ¶ 8.) Plaintiff has not suggested an alternative that is less restrictive but still accommodates the government's compelling interests in safety and security of prisons.

**B. First Amendment Claim**

In addition to his claim pursuant to RLUIPA, Plaintiff also alleges that Defendant's confiscation of his Religious Box violates the Free Exercise Clause of the First Amendment of the United States Constitution. The Fourth Circuit has held that "RLUIPA incorporates and exceeds the Constitution's basic protections of religious exercise." *Lovelace*, 472 F.3d at 198. The court in Lovelace explained that RLUIPA mirrors the First Amendment in that it incorporates the substantial burden test used in First Amendment inquiries and expressly refers to the Free Exercise clause in allocating its burden of proof. *Id.* The court went on to state that the primary difference between the two claims is that "RLUIPA adopts a more searching standard of review than that used for parallel First Amendment claims, strict scrutiny instead of reasonableness." *Id.* (quotation and citation omitted). Here, the undersigned has already found that Plaintiff has not established a prima facie case under RLUIPA because he is unable to establish that Defendant substantially burdened the exercise of his religion. RLUIPA provides more protection for an inmate's religious exercise than the First Amendment. Thus, the court finds that Plaintiff is likewise unable to establish a prima facie case under the First Amendment.

## C. Equal Protection Claim

Finally, Plaintiff also alleges that Defendant Waln has violated his right to equal protection of the law by discriminating against him because of his "race, ethnicity and beliefs." (Compl. at 9.) The Equal Protection Clause of the Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F. 3d 648, 654 (4th Cir. 2001). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact . . . .Proof of . . .discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-65 (1977). Additionally, a plaintiff asserting an equal protection claim must show that the alleged disparity in treatment is not rationally related to a legitimate governmental interest. *See McGinnis v. Royster*, 410 U.S. 263, 270 (1973).

To succeed on a claim of selective enforcement of prison rules and regulations based on race, therefore, an inmate must show that the challenged action both "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States,* 470 U.S. 598, 608 (1985). Plaintiff's equal protection claim fails because he has not put forward any evidence that he was treated differently than others with whom he was similarly situated. Plaintiff does not aver facts that the ACI storage policy was enforced only

against him or that religious property exceptions to the storage policy were made for other inmates but not for him.

Plaintiff has alleged that Defendant Waln used a derogatory term about Plaintiff while enforcing the storage policy. This allegation, without more, is simply insufficient to establish an equal protection claim. *See Henslee v. Lewis*, 153 Fed. App'x 178, 179 (4th Cir. 2005) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)) (finding that allegations of verbal abuse alone do not state a cognizable claim under § 1983).

Even if the court were to find that Plaintiff has made a prima facie showing of discriminatory effect and purpose, Defendant has satisfied its burden of showing that the disparate treatment is "reasonably related to [a] legitimate penological interest." *See Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (finding legitimate safety concerns justifying the segregation of homosexual male inmates into single-occupancy cells where heterosexual males and all female inmates were not subject to this requirement). Here, ACI has a legitimate penological interest in the protection of inmate property, the avoidance of inmate conflicts over lost or stolen property, and institutional cleanliness. The policy itself is even-handed and does not discriminate based on religion, race, or any other characteristics. Plaintiff clearly violated the storage policy; he has offered no evidence that the enforcement of the policy was based on improper or suspect classifications. As such, the claim must fail.

## IV. CONCLUSION

Plaintiff has failed to put forward any evidence showing a genuine issue of material fact as to any of his claims. For the foregoing reasons, **IT IS RECOMMENDED** that Defendant Waln's motion for summary be **GRANTED**. Furthermore, to the extent that

Plaintiff's Declaration (Docket Entry 42) is construed as a motion for appointment of counsel, that motion is **DENIED**.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
August 7, 2013